### JULY TERM, 1850.

No. 73.—JOSEPH JOHNSON, plaintiff in error, *vs.* THE STATE OF GEORGIA, defendant in error.

[1.] The Act of 1847, to prevent white people from gambling with negroes and free persons of color, creates the offence in three different forms.

1st. Playing *and* betting with a negro or free person of color, by those engaged in the game, is an offence.

2d. Also, playing *without* betting, on the part of those engaged, but with the purpose that others may bet: and

3d. Betting on a game played by others.

[2.] Playing, *per se*, without betting by those who play, and without the intent or purpose that others may bet, is not an offence under the Act of 1847.

[3.] *Query.* Whether proof of playing alone will create a presumption of guilt, so as to put the accused upon proof, that the playing was without betting, and without a purpose or intention that others might bet?

Gambling with a negro, in Macon Superior Court. Tried before Judge WARREN, February Term, 1850.

The indictment in this case, charged the defendant with "the offence of playing with a negro at a game of cards." For that the defendant, on a certain day specified, "did play at a game of cards with a negro slave" named, "for the purpose of winning or losing money or spirituous liquors, contrary to the laws," &c.

The defendant, on the trial, moved to take a verdict, on the

ground that the indictment and proof were too uncertain—no specific sum of money or specific article being alleged or proven to have been won or lost. The Court overruled the motion, and defendant excepted.

The defendant requested the Court to charge, that the bare fact of playing at cards with a negro, without betting, or for the purpose of betting, was not an offence under the Act of 1847, but that it was necessary to allege and prove that money or other thing of value was won or lost by the parties, or some other person.

The Court refused so to charge, but, on the contrary, charged the Jury, " that if they believed, from the evidence, that the defendant played a game of cards with the negro—whether they played for money or not—they would find him guilty." To which charge and refusal to charge, defendant excepted.

On these exceptions, error has been assigned.

J. HUDSON, for plaintiff in error.

SOLICITOR GENERAL PERKINS, for defendant.

Judge WARNER, being detained at home by severe family affliction, did not preside during this Term.

*By the Court.*—NISBET, J. delivering the opinion.

The offence charged in this indictment is gambling with negroes, under the Act of 1847 ; and the questions for review depend upon a construction of that Act. The indictment charges that the defendants are guilty of " the offence of playing with a negro at a game of cards. For that the said defendant, on the first day of March, in the year eighteen hundred and forty-nine, in the County aforesaid, did then and there, unlawfully, and with force and arms, play at a game of cards with a negro slave named Arthur—said negro being then and there the property of one Ephraim Taylor—for the purpose of winning or losing money or spirituous liquors, contrary to the laws of said State," &c. Being requested to charge,

1st. " That the bare fact of playing cards with a negro was not sufficient to constitute the offence designated and defined by that

Johnson *vs.* The State of Georgia.

Act ; that it was necessary to allege and prove that money or other thing or things, article or articles of value was bet and staked upon said game, either by the parties engaged at play, or some other person or persons ;"

2d. " That if the specific article or thing played and bet for, lost or won upon the game, was not alleged in the bill of indictment, and proved as therein laid and alleged, the defendant could not be found guilty."   The Court declined so to instruct the Jury, but did instruct them, " that if they believed, from the evidence, that the defendant played a game or games of cards with the negro—whether played for money or any other thing or things of value or not—they would find him guilty."

The refusal to charge as requested and the charge as given, are assigned for error.

[1.] The Act of 1847, by its title, is an Act to prevent gambling with negroes or free persons of color, by white persons.   Our opinion is, that it creates the offence in three different forms.

1st. Playing and betting with a negro or free person of color, by those engaged in the game.

2d. Playing without betting, on the part of those engaged, but with the purpose and intent that others may bet upon the game.

3d. Betting on a game played by others.

The Act is miserably drafted, but the construction, as above, is inferable from it, and we think, gives full effect to the intent of the Legislature.   That intent is to suppress the demoralizing and impolitic practice of gambling with slaves or free persons of color.   Gambling, generally, is gaming for money.   In this Act, gambling is playing with cards, dice or any other game of chance or hazard, *"for the purpose of betting, winning or losing money, or any other thing or things, article or articles of value or otherwise, or any property, or any other article or articles, thing or things of value."*   It consists also in playing at these games, that others may bet, win or lose money or any other thing or things, &c ; and in betting, winning or losing money or any other thing or things, &c. whilst others play the game.   See, *Pamphlet of* 1847, *p.* 105.

[2.] This construction excludes the idea that playing, *per se,* without betting on the game, or without any intent or purpose that others may bet, is an offence.   A game at cards, or any other game of chance or hazard, with a negro or free person of color,

simply for amusement, without more, is not made an offence by the Act, however vulgar and debasing it may be.

Now, the charge of the Court, *that if the defendant was proven to have played with the negro—whether he played for money or any other thing or things of value or not, he was guilty*—seems, at first view, to conflict with this view of the Statute, and to warrant the exception. Not so, however, if carefully considered; for he may be guilty, although he does not play himself for money or other thing. He may play and bet not at all, yet play that others may bet. He may be guilty under the second form, in which—as stated above—the Act defines the offence.

[3.] The Act of 1847 farther defines the mode of proof on the trial. By the 2d section, it is declared, " that on the trial of all indictments for said offence, the prosecution shall not be required to prove the game or games played, but shall be required to prove the playing or betting only." The last clause, in terms, sends the case to the Jury on proof of playing, and makes the other ingredient in the offence, an inference from that fact ; which inference, the accused must rebut at his peril—that is, if his playing was without betting, and without a purpose that others may bet—merely for amusement—he must show it in defence. The 2d section will bear this construction, but I must say that I am not fully satisfied with it; for I am not sure but that the generality of the last clause in the section is limited and restrained by the first clause. The construction is, however, in accordance with the policy of the Act, and may be justified by the difficulty of proving the offence at large. The same policy and the same necessity dictated the enactment, that the presence of a slave in a tipling shop within certain hours, or on the Sabbath day, shall be presumptive evidence of selling spirituous liquors to him, against the law. *Hotchkiss,* 771. These views dispose of all the assignments which relate to the charging, and refusal to charge, of the Court.

A motion was made to quash the indictment, because it does not allege that any specific sum of money, or any other specific article, was bet or staked on the game. This was not necessary. For it is not necessary, as we have seen, that the accused should bet at all. The indictment, moreover, charges the playing, and *for the purpose of winning or losing money or spirituous liquors, contrary to law.* At Common Law, the indictment would be held

wanting in distinctness and certainty, but it is sufficient under our Statute, for it describes the offence so plainly, as to make it intelligible to the Jury.

Let the judgment be affirmed.